UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Travis Tyrone Petty, | ) | C/A No. 7:25-cv-13647-BHH-WSB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Dep. Branson, Dep. Hendrich, Dep. J. Macklin, | ) | |
| Dep. T. Shue, Dep. Bennett, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, proceeding *pro se* and *in forma pauperis*, brings this civil action under 42 U.S.C. § 1983, alleging Defendants violated his rights under the United States Constitution. Plaintiff is a pretrial detainee and is currently incarcerated at the Spartanburg County Detention Center. Pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B) (D.S.C.), the undersigned United States Magistrate Judge is authorized to review the pleadings and submit findings and recommendations to the District Court. For the reasons below, this action is subject to summary dismissal.

## BACKGROUND

**Procedural History**

Plaintiff commenced this action by filing a Complaint on the standard form seeking relief pursuant to 42 U.S.C. § 1983. ECF No. 1. By Order dated December 4, 2025, the Court notified Plaintiff that the Complaint was subject to summary dismissal for the reasons identified by the Court in that Order. ECF No. 9. The Court noted, however, that Plaintiff may be able to cure the pleading deficiencies of the Complaint and granted Plaintiff twenty-one days to amend the Complaint. *Id*. at 9. Further, Plaintiff was specifically warned as follows:

1

> If Plaintiff fails to file an amended complaint that corrects the deficiencies identified [in the Court's Order], this action will be recommended for summary dismissal pursuant to 28 U.S.C. §§ 1915 and 1915A without further leave to amend.

*Id.* at 10 (emphasis omitted). Plaintiff was also warned that an amended complaint would replace all prior complaints and should be complete in itself and that any amended complaint would be subject to further review by the Court pursuant to 28 U.S.C. §§ 1915 and 1915A. *Id.* Plaintiff filed an Amended Complaint on December 29, 2025. ECF No. 11. This matter is therefore before the Court for a review of Plaintiff's Amended Complaint in accordance with 28 U.S.C. §§ 1915 and 1915A.

**Factual Allegations[1]**

*The Original Complaint*

Plaintiff makes the following allegations in the original Complaint. ECF No. 1. Plaintiff contends he was subjected to assault and battery and malicious prosecution. *Id.* at 4. Plaintiff alleges that, while he was getting arrested, the police turned off their body cameras and hit Plaintiff in the face and stomach. *Id.* Plaintiff needed to go to the emergency room. *Id.* Plaintiff contends the incident occurred on November 14, 2025, while he was at work at the Adidas factory. *Id.* at 5.

---

[1] An amended complaint replaces all prior complaints and should be complete in itself. *See Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) ("As a general rule, an amended pleading ordinarily supersedes the original and renders it of no legal effect.") (citation and internal quotation marks omitted); *see also* 6 Charles Alan Wright et al., *Federal Practice and Procedure* § 1476 (3d ed. 2017) ("A pleading that has been amended under Rule 15(a) supersedes the pleading it modifies and remains in effect throughout the action unless it subsequently is modified. Once an amended pleading is interposed, the original pleading no longer performs any function in the case . . . ."). Nevertheless, out of an abundance of caution and in order to give liberal construction to the claims alleged, the Court considers the allegations from both of Plaintiff's pleadings. The core allegations in each pleading are substantially the same, and, as discussed below, these pleadings (read either separately or in conjunction) fail to present allegations to state a plausible claim for relief.

2

Plaintiff alleges he was taken to the county jail, but he was not provided any medical. *Id.* For his injuries, Plaintiff alleges his face was damaged, he cannot sleep, and he has a major headache. *Id.* For his relief, Plaintiff seeks $200,000. *Id.*

### Amended Complaint

Plaintiff makes the following allegations in the Amended Complaint. ECF No. 11. Plaintiff contends he was subjected to "assault and battery, use of excessive force." *Id.* at 4. Plaintiff alleges that when he was being arrested, "they turn[ed] body cam[era] off and beat me up and restrained me to a patrol car [when] I was already full scale arrest[ed]." *Id.* Plaintiff asserts that on November 11, 2025,[2] he was at work when three deputies (that are not specifically identified) turned off their cameras and beat Plaintiff. *Id.* at 5. Plaintiff asserts there were no working cameras. *Id.* Plaintiff alleges that the deputies severely beat him and turned their cameras off while restraining him in a patrol car. *Id.*

For his injuries, Plaintiff contends he suffered "head damage," pain in his stomach, nightmares, hand injuries, and face scars. *Id.* at 6. For his relief, Plaintiff seeks $250,000 from each Defendant. *Id.*

---

[2] Although the Amended Complaint alleges the events giving rise to Plaintiff's claims occurred on November 11, 2025 (ECF No. 11 at 5), the original Complaint identifies the date as November 14, 2024 (ECF No. 1 at 5). In an attachment to the Amended Complaint, Plaintiff lists the date as November 14, 2025. ECF No. 11-1 at 1. The Incident Reports attached to the Amended Complaint list the date of arrest as November 14, 2024. ECF No. 11-1 at 8–13. In view of all these documents, the Court understands the appropriate date to be November 14, 2024, and any references to other dates by Plaintiff appear to be scrivener's errors.

## STANDARD OF REVIEW

**Review and Liberal Construction of *Pro Se* Filings**

Plaintiff filed this action pursuant to 28 U.S.C. § 1915, the *in forma pauperis* statute, which authorizes the district court to dismiss a case if it is satisfied that the action "fails to state a claim on which relief may be granted," is "frivolous or malicious," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Further, Plaintiff is a prisoner under the definition in 28 U.S.C. § 1915A(c) and "seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Thus, even if Plaintiff had prepaid the full filing fee, this Court would still be charged with screening Plaintiff's lawsuit to identify cognizable claims or dismiss the Complaint if (1) it is frivolous, malicious, or fails to state a claim upon which relief may be granted or (2) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A.

Because Plaintiff is a *pro se* litigant, his pleadings are accorded liberal construction and held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the *pro se* pleading remains subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the Court can reasonably read the pleadings to state a valid claim on which Plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999), construct Plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). The requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts which set forth a claim

4

cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

Although the Court must liberally construe the *pro se* pleadings and Plaintiff is not required to plead facts sufficient to prove his case as an evidentiary matter in the Complaint, the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (explaining that a plaintiff may proceed into the litigation process only when his complaint is justified by both law and fact). "A claim has 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 388 (4th Cir. 2014).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As noted, although the Court must liberally construe the pro se complaint, a plaintiff must do more than make conclusory statements to state a claim for relief. *See Iqbal*, 556 U.S. at 677; *Twombly*, 550 U.S. at 555. Rather, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face, and the reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions. *Iqbal*, 556 U.S. at 678–79; *see also Adams v. Rice*, 40 F.3d 72, 74–75 (4th Cir. 1994) (explaining that, although the court must liberally construe the pro se complaint, a plaintiff must do more than make mere conclusory statements to state a claim); *White v. White*, 886 F.2d 721, 723–74 (4th Cir. 1989) (dismissing complaint dismissed because it "failed to contain any factual allegations tending to support his bare assertion"). Thus, although a plaintiff is not required to

5

plead facts sufficient to prove his case as an evidentiary matter in the complaint, he must allege facts that support a claim for relief. *Bass v. DuPont*, 324 F.3d 761, 765 (4th Cir. 2003).

**Requirements to State a Claim under 42 U.S.C. § 1983**

The Complaint is filed pursuant to 42 U.S.C. § 1983, which "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). A civil action under § 1983 "creates a private right of action to vindicate violations of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012) (quoting 42 U.S.C. § 1983). To state a claim under § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

**Deliberate Indifference Standard[3]**

A pretrial detainee's claims related to inadequate medical care are governed by the Fourteenth Amendment rather than the Eighth Amendment. *Moss v. Harwood*, 19 F.4th 614, 624 (4th Cir. 2021) (citing *Martin v. Gentile*, 849 F.2d 863 (4th Cir. 1988)). As the United State Court of Appeals for the Fourth Circuit held:

> To state a claim for deliberate indifference to a medical need, the specific type of deliberate indifference claim at issue in this case, a pretrial detainee must plead that (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the

---

[3] Plaintiff's original Complaint asserted a claim for deliberate indifference. The Amended Complaint does not appear to assert that claim. However, out of an abundance of caution, the Court evaluates the claim as asserted in the original Complaint.

6

> defendant knew or should have known (a) that the detainee had that
> condition and (b) that the defendant's action or inaction posed an
> unjustifiably high risk of harm; and (4) as a result, the detainee was
> harmed.

*Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023). "Objectively, the inmate's medical condition must be 'serious' — 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)). "[M]ere delay" in medical treatment, without more, is not deliberate inference to a serious medical need. *Moskos v. Hardee*, 24 F. 4th 289, 298 (4th Cir. 2022). Differences of opinion between an inmate patient and medical staff over the course of medical treatment are insufficient to state a claim of deliberate indifference. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (finding inadequate treatment due to negligence, inadvertence, or differences in judgment between an inmate and the medical personnel does not rise to the level of a constitutional violation). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999); *see also Short*, 87 F.4th at 611–12 ("[I]t is still not enough for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee.") (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015); *Brawner*, 14 F.4th at 596; *Gordon*, 888 F.3d at 1125; *Miranda*, 900 F.3d at 353–54).

## **DISCUSSION**

To give liberal construction to the pleadings, the Court considers the allegations from Plaintiff's original Complaint in addition to the Amended Complaint. The Court concludes that the claims presented in this case are subject to dismissal for the following reasons.

**Defendants Entitled to Dismissal**

The named Defendants are entitled to summary dismissal because Plaintiff has failed to allege facts against them showing their personal involvement in any constitutional deprivation. The Court notes that the caption of the original Complaint lists three Defendants—Dep. Branson, Dep. Hendrich, and Dep. J. Macklin. ECF No. 1 at 1. Plaintiff's proposed Summons lists these same three Defendants but also lists three additional Defendants—Dep. R. Lancaster, Dep. T Shue, and Dep. K. Harrill. ECF No. 3 (Court only). However, Lancaster, Shue, and Harrill are not mentioned anywhere in the original Complaint.

Plaintiff's Amended Complaint lists five Defendants in the caption: Branson, Shue, Hendrich, Bennett, and Macklin. ECF No. 11 at 1. However, the body of the Amended Complaint does not contain any specific allegations against these individuals, nor does it even mention them anywhere by name.

Plaintiff fails to allege facts against any of these six individuals listed above to state a claim against them. Because Plaintiff makes no substantive allegations against the Defendants regarding their personal involvement in the body of either the original Complaint or the Amended Complaint, they are subject to dismissal. *See Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed."); *Newkirk v. Circuit Court of City of Hampton*, C/A No. 3:14-cv-372-HEH, 2014 WL 4072212, at *2 (E.D. Va. Aug. 14, 2014) (finding the complaint was subject to summary dismissal where plaintiff made no factual allegations against the named defendants within the body of the pleading). In the absence of substantive allegations of wrongdoing against Defendants, the Court is unable to liberally construe any type of plausible cause of action arising from the Complaint

against them. *See Cochran v. Morris*, 73 F.3d 1310, 1315 (4th Cir. 1996) (explaining statute allowing dismissal of in forma pauperis claims encompasses complaints that are either legally or factually baseless); *Weller*, 901 F.2d at 389 n.2 (finding dismissal proper where there were no allegations to support claim).

**Failure to State a Claim**

Plaintiff's Complaint and Amended Complaint both fail to allege facts to state a claim for relief that is plausible. Liberally construed, the original Complaint appears to assert a claim for deliberate indifference to Plaintiff's medical needs, a claim for excessive force, and a claim for malicious prosecution. The Amended Complaint appears to assert only a claim for excessive force. Plaintiff's allegations are insufficient to establish any claim for the reasons below.

### *Deliberate Indifference*

Plaintiff has failed to allege facts to support a claim for deliberate indifference. Plaintiff alleges in the original Complaint that he was denied medical care after being beaten by police officers. ECF No. 1 at 4–6. Plaintiff's Amended Complaint does not contain any allegations regarding medical care. In any case, Plaintiff has not identified any individual responsible for his medical care and treatment. *Bennett v. Nix*, C/A No. 4:18-cv-2781-JMC-TER, 2020 WL 608348, at *6 (D.S.C. Jan. 7, 2020) ("While non-medical personnel may be liable for medical indifference if they 'were personally involved in a denial of treatment, deliberately interfered with treatment, or tacitly authorized or were indifferent to a prison physician's misconduct,' . . . no such [allegations] exist here." (citation omitted)), *R&R adopted by* 2020 WL 607206 (D.S.C. Feb. 7, 2020). Because Plaintiff has not identified any individual responsible for the denial of medical care, the deliberate indifference claim fails.

9

Further, Plaintiff has attached to his Amended Complaint several documents including Incident Reports by various officers.[4]  ECF No. 11-1.  Those Incident Reports indicate that once Plaintiff arrived at the jail, he was evaluated by jail medical staff, and it was determined that he should be taken to the hospital.  *Id*. at 9.  Plaintiff was transported to Spartanburg Regional by Bennett where he received treatment and was release back to the jail.  *Id*. at 8, 12.  Thus, the records attached to Plaintiff's Amended Complaint show that he received medical treatment for his injuries, and the pleadings fail to allege facts showing that he was denied medical treatment or that the medical care he did receive was insufficient such that it rises to the level of deliberate indifference.  Accordingly, to the extent Plaintiff is asserting a claim for deliberate indifference, any such claim fails.

### Malicious Prosecution

Plaintiff's original Complaint makes a single, vague reference to "malicious prosecution."  ECF No. 1 at 4.  The Amended Complaint does not contain any allegations regarding malicious prosecution or any other Fourth Amendment violations.  The assertion in the original Complaint is insufficient to establish a claim for malicious prosecution.  To state a constitutional claim for malicious prosecution, "a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor."  *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012).  As to the favorable termination element, the United States Supreme Court recently explained that

> a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence.  A plaintiff

---

[4] Pursuant to Federal Rule of Civil Procedure 10(c), a document attached as an exhibit to a pleading is a part of the pleading for all purposes.  Therefore, the content of the exhibit is read as if it is the Plaintiff's substantive allegation.

> need only show that the criminal prosecution ended without a conviction.

*Thompson v. Clark*, 596 U.S. 36, 49 (2022). Plaintiff has not alleged facts showing that the criminal proceedings ended without a conviction. As such, any malicious prosecution claim fails.

### Excessive Force

In the original Complaint, Plaintiff alleges that he was hit in the face and stomach by police officers, causing injury. ECF No. 1 at 4–6. The Amended Complaint asserts vaguely that Plaintiff was subjected to excessive force and was beaten by police officers. ECF No. 11 at 4–5.

Plaintiff's allegations fail to state a claim for relief as he does nothing more than present conclusory allegations and legal conclusions. *Est. of Green v. City of Annapolis*, 696 F. Supp. 3d 130, 166 (D. Md. 2023) ("The presence, however, of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support a finding of deliberate indifference."). Plaintiff must allege more than mere cursory assertions to state a plausible claim for relief. *See Griffith v. State Farm Fire and Cas. Co.*, C/A No. 2:12-cv-00239-DCN, 2012 WL 2048200, at *1 (D.S.C. June 6, 2012) (finding that the plausibility standard requires more than "'an unadorned, the-defendant-unlawfully-harmed-me accusation.'" (quoting *Iqbal*, 556 U.S. at 678)). "Plaintiff's cursory allegations fail to state an actionable § 1983 claim . . ." *Branch v. Anderson Cnty. Det. Ctr.*, C/A No. 2:24-cv-00851-JFA-MGB, 2024 WL 4981587, at *4 (D.S.C. Oct. 18, 2024), *R&R adopted by* 2024 WL 4973401 (D.S.C. Dec. 4, 2024); *see also Hamilton v. United States*, C/A No. 2:20-cv-1666-RMG-MHC, 2020 WL 7001153, at *4 (D.S.C. Aug. 26, 2020) (finding claims frivolous where, other than naming defendants in the caption of her complaint, plaintiff failed to include sufficiently clear allegations of any personal conduct or wrongdoing in connection with the alleged federal

violations), *R&R adopted by* 2020 WL 5939235 (D.S.C. Oct. 7, 2020); *Garner v. Cohen*, C/A No. 2:16-cv-561-TLW-MGB, 2016 WL 9175627, at *4 (D.S.C. Sept. 1, 2016) (finding the complaint's "vague references to [*pro se*] Plaintiff's rights being violated, absent any specific facts or allegations against the Defendants, [were] wholly insufficient to state any sort of plausible claim"), *R&R adopted by* 2017 WL 2645754 (D.S.C. June 20, 2017); *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994) (explaining that a *pro se* plaintiff "must meet certain minimum standards of . . . specificity" in filing a complaint).

Further, Plaintiff has attached certain documents to his Amended Complaint.[5]  ECF No. 11-1.  First, Plaintiff attached seven pages of hand-written summary of the events that occurred

---

[5] The "exhibit-prevails rule . . . provides that 'in the event of conflict between the bare allegations of the complaint and any exhibit attached . . ., the exhibit prevails.'"  *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (second alteration in original) (quoting *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)).  Under this rule, "if a plaintiff 'attaches documents and *relies upon the documents to form the basis for a claim or part of a claim*, dismissal is appropriate if the document negates the claim."  *Id.* (emphasis added) (quoting *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002)).  The Fourth Circuit has explained as follows with regard to this rule:

> "[I]f a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim."  *Goines v. Valley Cmty. Services Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (internal quotation marks omitted).  The "exhibit-prevails" rule is based on "the presumption that the plaintiff, by basing his claim on the attached document, has adopted as true the contents of that document."  *Id.* at 167.  However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it."  *Id.*  "[I]n cases where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true."  *Id.*  "The purpose for which the document is offered is particularly important where the document is one prepared by or for the defendant.  Such unilateral documents may reflect the defendant's version of contested events or contain self-serving,

based on various officer Incident Reports. *Id*. at 1–7. Second, Plaintiff attached several officer Incident Reports, which form the basis for his hand-written summary. *Id*. at 8–13.

The first Incident Report notes that deputies arrived at Plaintiff's place of work on November 14, 2024, to serve active arrest warrants on Plaintiff for second degree domestic violence and placing a child at risk. *Id*. at 8. When officers arrived, Plaintiff exited the building and took off running. *Id*. Officers then gave chase. *Id*. Plaintiff was observed going over multiple fences with barbed wire. *Id*. Plaintiff resisted arrest when officers caught up to him. *Id*. Plaintiff was ultimately apprehended and officers noted that Plaintiff's hands were bleeding. *Id*. After Plaintiff was placed in a patrol vehicle, he unbuckled his seat belt and began moving around. *Id*. Officers checked Plaintiff for weapons and secured Plaintiff. *Id*. Plaintiff began "acting erratic" while being transported, so officers pulled over to check whether he was still in handcuffs and to resecure him. *Id*. During this contact, Plaintiff "continued acting erratic and irrational no matter how man times [the] Deputies pleaded with him to simply cooperate." *Id*. Plaintiff grabbed onto the shirt sleeve of one officer and appeared to be kicking at him. *Id*. Plaintiff "continued resisting arrest and wouldn't allow [the] car doors to be secured for safe transport." And when officers attempted to close the car doors, Plaintiff "would put his foot or knee in the way of the door." *Id*. Plaintiff continued to refuse to follow officer's commands. *Id*. While being transported to the

---

exculpatory statements that are unlikely to have been adopted by the plaintiff." *Id*. at 168.

*Bell v. Landress*, 708 F. App'x 138, 139 (4th Cir. 2018). Here, Plaintiff appears to have attached the Incident Reports to the Amended Complaint to demonstrate that officers used force, which Plaintiff believes was excessive, in their attempts to arrest and subdue him. Even though Plaintiff might contest certain facts included in the Incident Report narratives, he clearly relies on those Incident Reports to document the conduct of the officers. Plaintiff relies on the Incident Reports to form the basis of his claims. As such, the Court considers the narratives.

detention center, Plaintiff continued kicking at the car windows and "at one point was on his knees on [the] rear seat." *Id*. He also "took his hands and attempted to reach into [the] drivers compartment[,] by pushing the plastic divider behind [the] drivers seat with his hands while still being cuffed." *Id*.

In another Incident Report, Shue explained that he responded to a call for assistance and, upon arriving, "observed multiple deputies attempting to get [Plaintiff] secured into the vehicle." *Id*. at 9. Shue assisted in "trying to get [Plaintiff] to sit up correctly without laying down, and attempting to kick out the windows of the patrol vehicle." *Id*. Shue gained control of Plaintiff's left arm as he was attempting to lay back in the seat and Benned gained control of Plaintiff's torso. *Id*. Shue then attempted to grab Plaintiff's ankles to place them back in the vehicle. *Id*. Plaintiff "continued to become irate, and would lay back down in the seat, and would also maneuver his legs from the floor board of the car." *Id*. Other officers arrived to help secure Plaintiff. *Id*. Shue also notes that while transporting Plaintiff to the detention center, Plaintiff was "hitting his head on the window of Deputy Branson's patrol vehicle." *Id*. After arriving at the detention center, Plaintiff was evaluated and then transported to Spartanburg Regional Hospital. *Id*.

Hendrich explains as follows in an Incident Report. *Id*. at 10. Hendrich responded to Plaintiff's place of employment to assist in serving arrest warrants on Plaintiff. *Id*. Hendrich was advised that Plaintiff was trying to flee and set up a perimeter. *Id*. Hendrich observed Plaintiff "running between the cargo trailers" in a parking lot. *Id*. Hendrich was able to catch Plaintiff who "tried to pull away from [Hendrich] as [he] told him 'quit reaching, quit reaching, put your hands behind you.'" *Id*. Plaintiff pulled away, so Hendrich "conducted a hip toss to place him onto the ground." *Id*. Plaintiff refused commands. *Id*. Other officers arrived, and Plaintiff was restrained and placed into a patrol vehicle. *Id*. Hendrich sustained injuries in the form of bruises to the

14

outside of his left knee during this altercation. *Id*. Hendrich notes that, during transport to the detention center, Branson had to stop due to Plaintiff kicking the windows of the patrol car and trying to reach into the front seat of the vehicle. *Id*. Hendrich assisted in restraining Plaintiff while officers applied leg restraints. *Id*. Plaintiff was "grabbing at Branson's equipment on his vest and kicking at deputies." *Id*.

Macklin explains as follows in an Incident Report. *Id*. at 11. Macklin responded "to assist Warrants with a suspect attempting to flee from arrest on foot." *Id*. Plaintiff was already in custody and had been placed in the back of the officer's vehicle for transport. *Id*. While in route to the detention center, the officer pulled over due to Plaintiff unbuckling himself and "possibly slipping his cuffs." *Id*. "When more officers arrived on scene they attempted to secure [Plaintiff] in the back of the vehicle but he began resisting along with stating 'once you open these doors it's on.'" *Id*. Plaintiff was handcuffed on his stomach in the back of the vehicle, he but continued resisting. *Id*. Macklin opened the rea passenger door when Plaintiff began grabbing at Branson's shirt. *Id*. Macklin grabbed Plaintiff's left elbow with both hands to prevent him from rolling over. *Id*. Plaintiff wedged his foot in the door frame and refused commands to move his foot. *Id*. Plaintiff was "pushing off the rear driver door when another deputy assisted with keeping him inside the vehicle." *Id*.

Bennett explains as follows in an Incident Report. *Id*. at 12. When officers arrived at Plaintiff's place of employment to serve warrants, Plaintiff fled on foot. *Id*. After a brief chase, Plaintiff was apprehended. *Id*. While being transported to the detention center, Plaintiff was trying to slip his handcuffs and actively trying to kick out his window. *Id*. Branson pulled into the Westview Fire Department in order to secure Plaintiff. *Id*. Branson also requested EMS to respond to due Plaintiff bleeding from a laceration on his hands. *Id*. Bennett observed several deputies

15

attempting to secure Plaintiff, who was actively resisting their efforts by locking his body out and attempting to push their hands away with his feet. *Id*. Bennett pinned Plaintiff's feet to the seat. *Id*. Plaintiff continued to resist and refused commands to sit up. *Id*. Plaintiff would lock his feet in the door jam to prevent deputies from restraining him. *Id*. Bennett then grabbed Plaintiff around his torso and deputies were finally able to get him into a semi-seated position. After deputies shut the door, Plaintiff began forcibly kicking the vehicle's windows. Bennett road in Branson's vehicle with Plaintiff to assist in restraining him. *Id*. Plaintiff continued to hit the vehicle's window with his head and "continually stood up in the rear seat" while in route to the detention center. *Id*. Plaintiff attempted to stick his hand through the partition and Bennett "had to physically hold [the] partition in order to prevent [Plaintiff] from sticking his hand through." *Id*. After arriving at the detention center, Plaintiff was evaluated by medical staff and then transported to Spartanburg Regional. *Id*.

Jefferson explains in an Incident Report that Hendrich was injured while placing Plaintiff under arrest. *Id*. at 13. Jefferson photographed Hendrich's injuries. *Id*.

Although Plaintiff asserts vaguely that he was subjected to excessive force and that officers beat him, Plaintiff does not present any specific allegations against the identified individual officers as to any conduct to give rise to such claims. Instead, Plaintiff appears to rest on the factual narratives in the Incident Reports (summarized above) attached to the Amended Complaint. Even liberally construing the narratives in those Incident Reports most favorably to Plaintiff, they are insufficient to establish a claim for excessive force.

"[A]ll claims that law enforcement officials have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." *Graham v. Connor,* 490

16

U.S. 386, 395 (1989). *See also Riley v. Dorton,* 115 F.3d 1159, 1161 (4th Cir. 1997) (the Fourth Amendment "governs claims of excessive force during the course of an arrest, investigatory stop, or other 'seizure' of a person."). The Fourth Amendment test is "an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham,* 490 U.S. at 397. The test of reasonableness is "not capable of precise definition or mechanical application." *Id.* at 396. In determining the reasonableness of the use of force, the court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the importance of the governmental interest alleged to justify the intrusion. *Id.* (citations omitted). Courts have "long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* (citations omitted). "This right is obviously greater when the suspect is resisting arrest and refusing to comply with the officer's orders." *Yarborough v. Montgomery*, 554 F. Supp. 2d 611, 617 (D.S.C. 2008).

The reasonableness inquiry is fact specific and courts consider several factors, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citations omitted). The Supreme Court explained in *Graham* this reasonableness inquiry by noting that there must be an "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id.* 396–97.

In applying the factors and standard set forth above, Plaintiff's allegations and supporting documents fail to establish that the officers used excessive force in subduing and arresting Plaintiff.

17

The first element of the *Graham* test requires the Court to consider the severity of the crimes at issue. Officers were serving arrest warrants on Plaintiff charging him with second degree domestic violence and child endangerment, which are serious crimes.

The second factor to be considered is whether Plaintiff posed an immediate threat to officers or others. The Incident Reports that Plaintiff attached to the Amended Complaint note that Plaintiff ran away from officers attempting to serve the arrest warrants, that he resisted arrest throughout the entire encounter, he refused to obey officer commands, he was grabbing and kicking at officers, he injured one officer, and he was trying to force his way into the drivers' compartment of the police vehicle. ECF No. 1-1 at 8–13. Based on the narratives in the Incident Reports that Plaintiff relies upon, this factor weighs against Plaintiff and in favor of the officers because Plaintiff was actively resisting, injuring officers, and creating risks to officer safety. Thus, Plaintiff posed a threat of harm to officers. *Moore*, 2025 WL 1573519, at *5 ("Defendants knew Plaintiff was wanted for automobile theft, had active outstanding warrants, was fleeing from police, and refused to obey commands. In that context, Defendants used a reasonable amount of force to gain control over the situation to ensure order and safety.").

The third factor—whether Plaintiff actively resisted—weighs most heavily against Plaintiff. The Incident Reports, that Plaintiff himself cites, are replete with examples of Plaintiff continuing to resist officers throughout the entire encounter. Thus, the officers were entitled to use some degree of force to subdue Plaintiff. "[T]he right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. "This right is obviously greater when the suspect is resisting arrest and refusing to comply with the officer's orders." *Yarborough*, 554 F. Supp. 2d at 617 (holding officer did not use excessive force in using single blast from taser to subdue citizen).

18

Under the objective reasonable test, and in light of all the allegations made by Plaintiff and a review of the documents he has attached to the Amended Complaint, the officer's use of force in this situation was reasonable.  *See Brown v. Gilmore*, 278 F.3d 362, 369–70 (4th Cir. 2002) (holding no excessive force where a minimal level of force was applied, a reasonable officer would believe that the plaintiff was resisting, and where plaintiff alleges "no injury of any magnitude"); *Martin v. Gentile*, 849 F2d 863, 869 (4th Cir. 1988) (holding no excessive force where an armed rapist in the course of arrest refused to submit to handcuffing and sustained a cut above one eye, a puncture wound in his palm, and scrapes and bruises on his shoulders and elbows); *see also Redding v. Boulware*, 501 F. App'x 238, 241 (4th Cir. 2012) (holding no excessive force where plaintiff resisted being handcuffed for at least 10 minutes).  Although Plaintiff does not specifically allege the manner of force used against him, the Incident Reports note that officers grabbed Plaintiff's ankles and arms, one officer grabbed his torso, and another officer "hip tossed" Plaintiff to the ground—all in an effort to restrain and secure Plaintiff to transport to the detention center. These actions were necessary given Plaintiff's continued attempts to resist, flee, and harm the officers making the arrest.  There is no indication in the Incident Reports that any officer hit, punched, or kicked Plaintiff or used a weapon of any kind against him.  Taking Plaintiff's allegations as true and liberally construing them in connection with the Incident Reports he has attached, the Court finds that Plaintiff simply cannot establish a claim for excessive use of force given the facts alleged.  Indeed, the Incident Reports, which Plaintiff appears to rely upon to support his claims negate his assertions that he was subjected to excessive force.

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, the undersigned recommends that the district court **DISMISS** this action without further leave to amend and without issuance and service of process.

19

**IT IS SO RECOMMENDED**.

s/William S. Brown_____
United States Magistrate Judge

December 30, 2025
Greenville, South Carolina

*Plaintiff's attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street, Suite 2300
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).